UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CLENARD CEBRON WADE,

       Petitioner,

   v.

FRED FOULK,

       Respondent.

Case No.  13-cv-4636-TEH

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

    Petitioner Clenard Cebron Wade, a state prisoner, proceeds with a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Respondent was ordered to show cause why the petition should not be granted.  Respondent has filed an answer and Petitioner filed a reply.  For the reasons set forth below, the petition is DENIED.

I

    Petitioner was found guilty after a jury trial of grand theft, battery causing serious bodily injury, criminal threats, assault, and false imprisonment by violence.  People v. Wade, 204 Cal. App. 4th 1142, 1146 (2012).  He was found not guilty of fifteen other counts.  Id. at 1145-46.  He was sentenced to 33 years and 8 months to life in state prison.  Id. at 1146.  In a partially published opinion the California Court of Appeal affirmed the conviction, but reduced one of the convictions from grand theft to petty theft.  Id.; Answer, Ex. G.  Petitioner was

not retried on the theft count and the California Supreme Court denied review.  He was resentenced to 33 years to life.

## II

The following factual background is taken from the order of the California Court of Appeal.[1]

> Because the facts underlying the counts involving Jane Doe I are not relevant to the issues on appeal, we need not summarize them, other than to point out that they involve several alleged episodes of threats and physical and sexual violence against Jane Doe I, a woman with whom defendant had resided in a romantic relationship.  Because the facts underlying the counts involving Jane Doe II are relevant to the issues on appeal, we do summarize them.
>
> Jane Doe II testified she had a brief relationship with defendant in August 2006. He arrived at her house in the early morning hours of August 26th.  He was slurring his words and being very loud, and she told him to leave.  He got on top of her on her bed and refused to leave.  They argued and he began to choke her with his arm.  She managed to get his arm off her neck and they struggled.  Defendant threatened to kill her and began to choke her again, this time with his two hands.  Defendant put so much pressure on her throat that she could not breathe, and she blacked out.  She did not know for how long she was unconscious.
>
> Jane Doe II's daughter came to Jane Doe II's room and they yelled at defendant until he exited through the front door.  Jane Doe II saw that defendant was holding her purse. Jane Doe II's daughter tried to retrieve the purse, but defendant hit her with the purse and pushed her.  The purse fell on the ground during the struggle; Jane Doe II tried to pick it up, but defendant managed to get it. Defendant left with the purse, which contained about $700.

---

[1] This summary is presumed correct.  <u>Hernandez v. Small</u>, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

United States District Court
Northern District of California

> Jane Doe II testified she had bruises on her neck from the choking; the bruises remained for about a week.  The mobility of her neck was not impaired by the choking.  She did not seek medical treatment.
>
> About two weeks after the incident, defendant left Jane Doe II a voice mail message stating, "I see you are not home and this is O'fear.  I wouldn't come home tonight because you are gonna die."

Wade, 204 Cal. App. 4th at 1146-47(footnote omitted).

## III

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review.  A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Additionally, habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict."  Penry v. Johnson, 532 U.S. 782, 795 (2001) (internal quotation marks omitted).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."

**Williams (Terry) v. Taylor**, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" **Felkner v. Jackson**, 562 U.S. 594, 598 (2011).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." **Williams**, 529 U.S. at 412. "A

United States District Court
Northern District of California

federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003).

When applying these standards, the federal court should review the "last reasoned decision" by the state courts. See Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the state's highest court, the court "looks through" to the last reasoned opinion. See Ylst, 501 U.S. at 804. When the state courts have adjudicated a claim on the merits but no state court has supplied a reasoned decision, the federal court must undertake an independent review of the record to determine whether the state courts' denial was objectively reasonable. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

With these principles in mind regarding the standard and scope of review on federal habeas, the Court addresses Petitioner's claims. He alleges that: (1) the trial court denied him his right to represent himself; (2) the trial court gave erroneous jury instructions with respect to battery with serious bodily injury; and (3) juror misconduct and bias.[2]

_____

[2] Several other claims were dismissed, but the Court found that liberally construed these claims were sufficient to require a response. Docket Nos. 25, 27.

## IV

## A

Petitioner first contends that the trial court improperly denied his motion to represent himself pursuant to Faretta v. California, 422 U.S. 806 (1975).

The California Court of Appeal set forth the background for this claim:

> In the present case, on April 7, 2008, defendant filled out a form in which he asked to be permitted to represent himself. On the form, he acknowledged specified hazards in self-representation. He also indicated that he did not know the possible defenses to the charged offenses and that he wished to talk to a lawyer regarding the elements of the charged offenses and possible defenses.

> On April 8, 2008, the trial court held a hearing on defendant's Faretta motion. The court asked defendant if he knew the defenses to the charges, and defendant said that he knew some of the charges or defenses. The court explained that the charges were "very serious," expressed doubt that defendant could represent himself without being aware of the defenses, and noted that defendant had indicated on the form that he wanted to talk to a lawyer about the elements to the charged offenses and possible defenses. After the court noted that defendant had a lawyer, the following exchange occurred:

> "DEFENDANT: This happened yesterday. 'Cause I filled out yesterday the Faretta attachment. I haven't considered it until yesterday, so I haven't had much time to just go over it with him.

> "THE COURT: Well I'm not satisfied, Mr. Wade, that you understand exactly what's involved with this representation here —

> "DEFENDANT: Okay.

> "THE COURT: — given the nature of the charges. [¶] So what I'm thinking is if you want to familiarize yourself with the possible defenses to the charges, and there

are many charges here, and you want to refile a request for a <u>Faretta</u>, I'll reconsider it. [¶] At this time, based on the fact that you do not know the possible defenses to the charges, I'm going to deny your request without prejudice —

"DEFENDANT: Okay.

"THE COURT: — to you refiling this —

"DEFENDANT: All right.

"THE COURT: — if you choose to do so. [¶] But as I said, looking at these charges here, they're very, very serious.  And your risk of exposure if you're convicted is huge, so I think that if you want to take some time and maybe speak to an attorney, your attorney, about the possible defenses to the charges and then come back to the court, you may do that.

"DEFENDANT: Okay.

"THE COURT: But at this point I'm going to deny your request.

"DEFENDANT: All right."

Ex. G at 5-7.  Petitioner also indicated in the written <u>Faretta</u> motion prior to the hearing described above, that he wished to speak to his lawyer to have the defenses and elements of the charges explained and he was unaware of possible defenses in the case.  Clerk's Transcript ("CT") at 424.

On July 15, 2008, Petitioner filed another <u>Faretta</u> motion. CT at 429-31.  The trial court held another hearing and the following exchange occurred:

THE COURT: Sir, there are 23 charges, plus all of the enhancements.  That is enormous. I really want you to go through it with someone.  And if you go through it with [trial counsel], you go through each of the counts with him, and you figure out what your defenses are going to be for each of them. And if you still want to represent yourself, then you'll be well on your way.  But you might as well have the benefit of [trial

7

counsel's] advice before you go through that.

Can I set up a time right now for you to do that and we can put this on hold?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay.  [trial counsel], when are you going to be able to go through all 23 counts with him?

[TRIAL COUNSEL]: Well, Mr. Wade knows that I'm going on vacation in a couple of days. It would have to be when I return.  But we've also spoken about the issue of the trial date.  I am making a motion to continue.  Mr. Wade concurs in that, and [the prosecutor] has no objection.  So we should have sufficient time to do that.

THE COURT: Okay. So—

[TRIAL COUNSEL]: What I would propose is, if Mr. Wade wishes, because I know he's represented several times that he wishes to represent himself, we can do one of two things today: We could pick another trial date or we could come back in mid-August when I return after I've had a chance to talk to Mr. Wade, and he can alert the Court at that time if in fact he wishes to represent himself or not.

THE COURT: What would you like to do, sir?

THE DEFENDANT: That one.

THE COURT: Okay.

[TRIAL COUNSEL]: Why don't we return—why don't we come back August 21st—

THE COURT: Okay.

Reporter's Transcript ("RT") at 91-92.

On September 11, 2008, Petitioner withdrew the <u>Faretta</u> motion.  CT at 433; Traverse at 43.  The California Court of Appeal denied this claim, though only discussed the first hearing held on April 7, 2008.

From that exchange, it is clear the trial court denied defendant's request to represent

8

United States District Court
Northern District of California

himself in order to provide defendant an opportunity to acquaint himself with the defenses to the charges before deciding whether to represent himself. Defendant himself had requested an opportunity to discuss possible defenses with an attorney. It was not improper for the trial court to conclude that, in a case of this nature, it was appropriate that defendant have that discussion with counsel before the court found that defendant made a "knowing" decision to represent himself. Such a discussion would provide defendant a better idea of what the task of representing himself would entail and, thus, help defendant to "'"understand the significance and consequences"'" of the decision to represent himself. (Sullivan, supra, 151 Cal.App.4th at p. 545; see Iowa v. Tovar (2004) 541 U.S. 77, 92 ["the information a defendant must have to waive counsel intelligently will 'depend, in each case, upon the particular facts and circumstances surrounding that case'"].)

Defendant contends the trial court erred because, after he stated he was only aware of "some" of the charges or defenses, the court stated, "That's a problem because for you to be able to represent yourself you have to know the possible defenses." He contends the court effectively denied his motion because he had not demonstrated the ability to defend himself competently, which would be contrary to Faretta. (Faretta, supra, 422 U.S. at pp. 835-836.) However, the trial court expressly denied the motion because the court was not satisfied that defendant understood "exactly what's involved with this representation here." Thus, the denial was based on defendant's lack of understanding of the consequences of the decision to represent himself, not his inability to represent himself. The trial court did not err in denying defendant's Faretta motion.

Ex. G at 7.

A criminal defendant has a Sixth Amendment right to self-representation. Faretta, 422 U.S. at 832. But a defendant's decision to represent himself and waive the right to counsel must be unequivocal, knowing and intelligent, timely, and not for

9

United States District Court
Northern District of California

purposes of securing delay.  Id. at 835; United States v. Arlt, 41 F.3d 516, 519 (9th Cir. 1994).

A request for self-representation must be unequivocal. Meeks v. Craven, 482 F.2d 465, 466-68 (9th Cir. 1973); accord Armant v. Marquez, 772 F.2d 552 (9th Cir. 1985).  The requirement of unequivocality serves two purposes: it ensures that the defendant does not inadvertently waive his right to counsel, Meeks, 482 F.2d at 467, and also prevents the defendant from taking advantage of the mutual exclusivity of the rights to counsel and self-representation, Adams v. Carroll, 875 F.2d 1441, 1444 (9th Cir. 1989).  If a defendant equivocates, he is presumed to have requested the assistance of counsel.  Id.

Before a trial court may allow an accused to exercise the right of self-representation, it must conclude that the accused has "knowingly and intelligently" waived his underlying right to counsel.  Faretta at 835.  Consequently, the Sixth Amendment requires that a state trial court, before letting an accused proceed pro se, be assured that he "is made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Snook v. Wood, 89 F.3d 605, 613 (9th Cir. 1996) (quoting Faretta at 835).

Petitioner has failed to show that the state court opinion was an unreasonable application of Supreme Court authority.  When Petitioner first requested to represent himself, the trial court denied the motion without prejudice so Petitioner could discuss it with counsel and make an informed decision.  It was Petitioner who stated that he had not had time to discuss the request with

10

his attorney.  Petitioner also indicated in the written <u>Faretta</u> motion that he wished to speak with his attorney about the case and did not know about possible defenses.  The trial court denied the request without prejudice so that Petitioner could consult his attorney to more fully understand the significance and consequences.  Allowing Petitioner this extra time to make a knowing and intelligent waiver was not an error, and Petitioner has not shown that his request was unequivocal.

At the second hearing on July 15, 2008, the trial court continued the hearing so that Petitioner could discuss all 23 counts against him with his attorney before deciding to exercise his <u>Faretta</u> rights.  Two months later Petitioner withdrew his <u>Faretta</u> motion.  For all the reasons discussed above, Petitioner is not entitled to relief.  The state court denied Petitioner's request without prejudice so that Petitioner could first consult with his attorney and then make a 'knowing' decision.  After Petitioner discussed the issue with his attorney on multiple occasions, Petitioner ultimately withdrew the motion.  The state court's decision finding no error was not objectively unreasonably and this claim is denied.

B

Petitioner next argues that the trial court gave an erroneous jury instruction with respect to battery with serious bodily injury.  He argues that the evidence did not support the finding that the battery committed against Jane Doe II resulted in serious bodily injury, because there was no evidence that the injury required medical attention.  Petitioner choked Jane Doe II, and she blacked out and did not know how long she was

United States District Court
Northern District of California

unconscious.

The California Court of Appeal denied this claim:

A battery is "any willful and unlawful use of force or violence upon the person of another." (§ 242.) "If, however, the batterer not only uses unlawful force upon the victim but causes injury of sufficient seriousness, then a felony battery is committed. For this second category of battery, 'serious bodily injury' is required. (§ 243, subd. (d).)" (People v. Longoria (1995) 34 Cal. App. 4th 12, 16, 40 Cal.Rptr.2d 213 (Longoria).) The statute provides that "'Serious bodily injury' means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." (§243, subd. (f)(4).) Section 243 also prescribes enhanced punishment for batteries against peace officers and other specified persons. "If what would otherwise be a simple battery (any unlawful touching, even without causing pain or injury) is committed against, e.g., a peace officer engaged in the performance of his/her duties, then the offense is punishable by one year in county jail and a $2,000 fine." (Longoria, at p. 16, 40 Cal.Rptr.2d 213; see § 243, subd. (b).) "Similarly, a distinction is made when it is a peace officer" or another specified person "who is injured by a batterer. Unlike the ordinary victim, for enhanced punishment to be imposed 'serious bodily injury' is not required. Section 243, subdivision (c) provides that a battery against a peace officer engaged in the performance of his/her duties is punishable by a $2,000 fine and three years in state prison when 'an injury is inflicted on that victim.'" (Longoria, at pp. 16–17, 40 Cal. Rptr. 2d 213, first italics added; see also People v. Wilkinson (2004) 33 Cal. 4th 821, 831, 16 Cal. Rptr. 3d 420, 94 P.3d 551.) The statute provides that "'Injury' means any physical injury which requires professional medical treatment." (§ 243, subd. (f)(5).)

In the present case, defendant argues that both the section 243, subdivision (f)(4) and

United States District Court
Northern District of California

(f)(5) definitions must be satisfied in order to show the "serious bodily injury" required to sustain a conviction for felony battery under section 243, subdivision (d). That is, he argues that, because the word "injury" is part of the phrase "serious bodily injury," the injury suffered by the victim must both require medical treatment (§ 243, subd. (f)(5)) and also constitute serious impairment of a physical condition (§ 243, subd. (f)(4)). The instruction given by the trial court, CALCRIM No. 925, did not require a finding of necessity of medical treatment: "Whether a particular injury qualifies as a 'serious bodily injury' is a matter for the jury to determine. You must evaluate the nature, extent, and seriousness of any injury when considering this question. To find an injury to be a 'serious bodily injury,' you must find that the injury caused a serious impairment of physical condition. Such an injury may include, but is not limited to, loss of consciousness. While a loss of consciousness may qualify as serious bodily injury, whether it so qualifies in this case is a matter for the jury to determine." If defendant's interpretation of the statute is correct, the trial court's instruction was erroneous, because "The trial court must instruct even without request on the general principles of law relevant to and governing the case. [Citation.] That obligation includes instructions on all of the elements of a charged offense. [Citation.]" (People v. Cummings (1993) 4 Cal. 4th 1233, 1311, 18 Cal. Rptr. 2d 796, 850 P.2d 1.) Under defendant's interpretation of the statute, an injury requiring medical treatment is an element of the offense of battery with serious bodily injury.

To resolve whether defendant's interpretation of section 243 is correct, we are guided by familiar canons of statutory construction. "'[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining that intent, we first examine the words of the respective statutes: 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does

not exist.' [Citation.]"' [Citation.] If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (People v. Coronado (1995) 12 Cal. 4th 145, 151, 48 Cal. Rptr. 2d 77, 906 P.2d 1232.)

We conclude that the plain language of section 243, subdivision (f)(4) controls. That is, a loss of consciousness that constitutes a "serious impairment of physical condition" is a "serious bodily injury" without any showing that the injury required medical treatment. If the Legislature had intended that "serious bodily injury" means a "serious impairment of physical condition" that also required medical treatment, it could have so provided. The separate definition of "injury" in subdivision (f)(5) does not render ambiguous the clear language of subdivision (f)(4), because subdivision (f)(5) clearly applies to section 243, subdivision (c), for batteries against peace officers or other specified persons causing "injury." Accordingly, applying the plain language of subdivision (f)(4) does not, contrary to defendant's assertion, make the definition of "injury" in subdivision (f)(5) surplusage. (See In re Jerry R. (1994) 29 Cal. App. 4th 1432, 1437, 35 Cal. Rptr. 2d 155 ["Whenever possible, we must give effect to every word in a statute and avoid a construction making a statutory term surplusage or meaningless. [Citations.]"].)

Moreover, "serious bodily injury," as used in section 243, is " 'essentially equivalent' " to "'great bodily injury,'" as used, for example, in the section 12022.7 enhancement for the infliction of such injury on a person during the commission of a felony. (People v. Burroughs (1984) 35 Cal. 3d 824, 831, 201 Cal. Rptr. 319, 678 P.2d 894, overruled on another ground in People v. Blakeley (2000) 23 Cal. 4th 82, 89, 96 Cal. Rptr. 2d 451, 999 P.2d 675; accord, People v. Moore (1992) 10 Cal. App. 4th 1868, 1871, 13 Cal. Rptr. 2d 713; People v. Villarreal (1985) 173 Cal.

United States District Court
Northern District of California

14

> App. 3d 1136, 1141, 219 Cal. Rptr. 371; <u>see
> also</u> <u>People v. Hawkins</u> (1993) 15 Cal. App.
> 4th 1373, 1375, 19 Cal. Rptr. 2d 434
> ["substantially the same meaning"]; <u>but</u> <u>see</u>
> <u>People v. Taylor</u> (2004) 118 Cal. App. 4th 11,
> 26, 12 Cal. Rptr. 3d 693 [although the "usual
> assumption" is that the phrases have the
> "same meaning," the statutory definitions
> differ].) "'[G]reat bodily injury' means a
> significant or substantial physical injury."
> (§ 12022.7, subd. (f).)  Although any medical
> treatment obtained by the victim is relevant
> to determining the existence of "great bodily
> injury"  (<u>People v. Cross</u> (2008) 45 Cal .4th
> 58, 66, 82 Cal. Rptr. 3d 373, 190 P.3d 706),
> the statutory definition and relevant CALCRIM
> instruction (No. 3160) do not require a
> showing of necessity of medical treatment.
> Nor are we aware of any case authority
> imposing such a requirement. Accordingly, our
> construction of "serious bodily injury" is
> consistent with the definition of "great
> bodily injury."
>
> Because the prosecution was not required to
> show that Jane Doe II's injury required
> medical treatment in order to prove defendant
> committed a battery causing serious bodily
> injury, the trial court's instruction
> properly omitted that element.  We will
> affirm the conviction for felony battery
> against Jane Doe II.

<u>Wade</u>, 204 Cal. App. 4th at 1147-50(footnotes omitted).

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 71-72 (1991).

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  <u>See</u> <u>Estelle</u> at 72; <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973).  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  <u>See</u> <u>Estelle</u> at

72.   In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).

To the extent Petitioner argues that the state courts misinterpreted state law, he is not entitled to federal habeas relief.  Nor has Petitioner shown that the jury instruction was so deficient that it infected the entire trial and violated due process.  There was sufficient evidence to find that the victim suffered serious bodily injury when she was choked into unconsciousness, and the state court's decision that there was no error in the jury instruction was not unreasonable.

To the extent Petitioner contends the battery statute is void for vagueness because he did not have adequate notice that his conduct was forbidden, he is not entitled to relief.[3] Petitioner had notice that committing a battery was prohibited. And as noted above, the statute states that loss of consciousness can be a serious bodily injury.  Nor has Petitioner cited to any authority clearly establishing that because a jury has discretion to determine whether loss of consciousness is a serious bodily injury, then this discretion violates the Constitution.  See Panther v. Hames, 991 F.2d 576, 578-79 (9th Cir. 1993).

---

[3] In the motion to dismiss, the Court noted that, liberally construed, Petitioner's claim presented a federal claim regarding jury instruction error that violated his federal due process rights.  It is not clear if Petitioner also intended to present a vagueness claim, and he did not discuss it in his traverse. Regardless, the Court will still look to the merits of a vagueness claim.

United States District Court
Northern District of California

It has also been found that the term "serious bodily injury" is not unconstitutionally vague.  See Butler v. O'Brien, 663 F.3d 514, 521 (1st Cir. 2011).  The state court's denial was not unreasonable and Petitioner has failed to show that he did not have notice that strangling someone to the point of unconsciousness could result in battery with serious bodily injury.

### C

Petitioner next alleges that jurors were biased and committed misconduct.[4]  He argues that two jurors worked for a business under criminal investigation (including one who worked for the county vehicle pool) and another juror was friends with a testifying police officer.

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors.  U.S. Const. amend. VI; see Irvin v. Dowd, 366 U.S. 717, 722 (1961).  "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." Tinsley v. Borg, 895 F.2d 520, 523-24 (9th Cir. 1990) (internal quotation marks omitted).

The Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation." Smith v. Phillips, 455 U.S. 209, 217 (1982).  The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually

---

[4] The Court has conducted and independent review of the record to determine whether the state court denial was objectively reasonable because there was no reasoned decision for this claim. See Delgado, 223 F.3d at 982.

United States District Court
Northern District of California

impossible to shield jurors from every contact or influence that might theoretically affect their vote.  _Id_.  Due process only means a jury capable and willing to decide the case solely on the evidence before it and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.  _Id_.  Such determinations may properly be made at a hearing.  _Id_.  Rather than ordering a new trial any time the issue of juror bias arises, holding a hearing to determine actual bias is the appropriate course of action.  _Id_.

The Ninth Circuit has stated that:

> A court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances.  An informal in camera hearing may be adequate for this purpose; due process requires only that all parties be represented, and that the investigation be reasonably calculated to resolve the doubts raised about the juror's impartiality.  So long as the fact-finding process is objective and reasonably explores the issues presented, the state trial judge's findings based on that investigation are entitled to a presumption of correctness.

_Dyer v. Calderon_, 151 F.3d 970, 974–75 (9th Cir. 1998) (en banc) (internal citations omitted).

Petitioner has failed to show he is entitled to relief for his general claim that two jurors worked for a business under criminal investigation, including one of whom worked for the county vehicle pool.  He presents no specific arguments, just conclusory allegations with little support.  _See_ _James v. Borg_, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").  Petitioner does not describe how these jurors

were biased due to their employment.  Similarly, his general allegations that jurors should not have been empaneled due to the questionnaires they submitted are insufficient to warrant habeas relief.  Moreover, the jury found Petitioner not guilty of fifteen of the twenty counts.

Petitioner also argues that a juror was biased because he informed the judge midtrial that he recognized a testifying police officer when he entered the court as someone he had gone to high school with.  The trial court and the attorneys questioned the juror.  RT at 849-57.  The juror stated that he had gone to high school with the police officer but had not seen or talked to him in at least four years.  RT at 850.  He stated that they were friends in high school, but only hung out once in a while at that time and then went their separate ways after graduation.  RT at 851.  The juror stated at the beginning of trial that he did not recognize the name and it was only upon seeing the officer that he recognized him.  RT at 856.  Petitioner's trial counsel stated that it was an honest mistake.  Id.  The juror stated he would be fair and impartial regarding the police officer's testimony.  RT at 852-57.  The trial court also re-read a jury instruction to the juror regarding the credibility of witnesses.  RT at 854.  After hearing arguments from the attorneys and reviewing the transcripts, the trial court found that the juror could be fair and impartial and should not be released.  RT at 862-64

After the trial court ruled that the juror would stay, the police officer at issue testified.  The police officer testified that he responded to a radio call for a possible rape, observed

1    Petitioner, radioed for more officers and was one of the officers

2    who apprehended Petitioner.  RT at 865-74.  The officer also

3    logged clothing and other items from Petitioner into evidence at

4    the police station.  RT at 875-78.

5       Petitioner has failed to demonstrate an unreasonable

6    application of Supreme Court authority or an unreasonable

7    determination of the facts.  The trial court conducted a proper

8    investigation of the relevant facts and circumstances.  See

9    Miller v. Fenton, 474 U.S. 104, 114-15 (1985) (a state trial

10   judge is in a far superior position to assess juror bias than

11   federal habeas judges); see also Austad v. Risley, 761 F.2d 1348,

12   1350 (9th Cir. 1985) ("The Supreme Court has clearly established

13   that the determination of a juror's partiality or bias is a

14   factual determination to which section 2254(d)'s presumption of

15   correctness applies."), citing Patton v. Yount, 467 U.S. 1025,

16   1036 (1984).

17      Petitioner has not shown that the juror was biased or that

18   he failed to decide the case solely on the evidence.  The juror

19   had not spoken to the police officer in more than four years and

20   they were not close friends in high school.  The police officer's

21   involvement only concerned the arrest of the Petitioner with

22   other police officers and the logging of evidence at the police

23   station.  In closing argument by trial counsel the only reference

24   to the police officer was that he observed Petitioner and did not

25   see or recover any weapons and that Petitioner was acting

26   normally.  Petitioner is not entitled to habeas relief.

27

28

United States District Court
Northern District of California

V

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

Further, a Certificate of Appealability is DENIED.  <u>See</u> Rule 11(a) of the Rules Governing Section 2254 Cases.  Petitioner has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals for the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure.  <u>See</u> Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk is directed to enter Judgment in favor of Respondent and against Petitioner, terminate any pending motions as moot and close the file.

IT IS SO ORDERED.

Dated: 01/14/2016

_____
THELTON E. HENDERSON
United States District Judge

G:\PRO-SE\TEH\HC.13\Wade4636.hc.docx

21